UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ABU-ALI ABDUR' RAHMAN     )
                          )
v.                        )    No. 3:96-0380
                          )    JUDGE CAMPBELL
WAYNE CARPENTER, Warden[1] )    DEATH PENALTY

## MEMORANDUM AND ORDER

Pending before the Court are Petitioner's Motion For Relief From Judgment (Docket No. 351); Supplemental Authority In Support Of Motion For Relief From Judgment (Docket No. 353); Second Supplemental Authority In Support Of Motion For Relief From Judgment (Docket No. 354); Third Supplemental Authority In Support Of Motion For Relief From Judgment (Docket Nos. 357, 359); Reply To Response To Supplemental Authorities In Support Of Motion For Relief From Judgment (Docket No. 366); and Statement Regarding Claims (Docket No. 367); as well as the Respondent's Responses thereto (Docket Nos. 352, 364).

Through the Motion For Relief, Petitioner requests that the Court reopen its judgment denying habeas corpus relief on claims previously found procedurally defaulted, pursuant to Fed. R. Civ. Rule 60(b), 60(b)(6) and 60(d)(1), 28 U.S.C. § 2243, Article I §9, Article III and the Fifth and Fourteenth Amendments to the Constitution. Relying on the Supreme Court's decisions in *Martinez v. Ryan*, 566 U.S. ___, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2011) and *Trevino v. Thaler*, 569 U.S. ___, 133 S.Ct. 1911, 185 L. Ed. 2d 1044 (2013), Petitioner specifically seeks to have the Court consider certain claims on the merits: the "cumulative error"

---

[1] The parties appear to agree that the Warden of the facility currently housing the Petitioner is Wayne Carpenter.

claim, and the claim that the jury was not instructed about the need for independent corroboration of DeValle Miller's accomplice testimony and that counsel was ineffective for failing to raise this challenge. (Docket No. 367, at 1).

The cumulative error claim appeared in the Amended Petition as follows:

> B. GENERAL DUE PROCESS VIOLATION; CUMULATIVE EFFECT OF VIOLATIONS
>
> Petitioner alleges that all violations of his rights set forth in this Petition are direct violations of his federal constitutional rights. Further, to the extent the State or the State Court violated Petitioner's State-created rights, such a violation also amounts to an unlawful infringement upon Petitioner's liberty interests in violation of the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution.
>
> Petitioner further alleges that each violation of his constitutional rights set forth in this petition provides a sufficient ground for habeas relief. Moreover, the cumulative effect of the violations set forth in this petition mandate habeas relief. The entire criminal proceeding against Petitioner was infected with constitutional error from the outset through the final outcome.

(Docket No. 42, at 27(¶ B)). In ruling on Respondent's procedural defenses to certain of Petitioner's claims, this Court considered this claim and explained in a footnote:

> Respondent has asserted a procedural default defense as to Petitioner's claim that the cumulative effect of all errors at trial violated Petitioner's due process rights. (Amended Petition, ¶ B). In his brief, Petitioner indicates that this is not a separate claim for habeas relief, but is an argument to be considered in determining whether the state court's alleged errors should be considered harmless. Therefore, the Court will not consider this argument as a separate claim.

*Abdur'Rahman v. Bell*, 999 F.Supp. 1073, 1083 n. 10 (M.D. Tenn. 1998). In a later appeal, however, the Sixth Circuit considered the "cumulative error" claim, through which the Petitioner argued that the court should cumulate his individual *Brady* claims with his prosecutorial misconduct or *Strickland* claims and determine that the resulting prejudice makes his death

sentence unfair and violative of due process. *Abdur'Rahman v. Colson*, 649 F.3d 468, 472 (6th Cir. 2011). The appeals court ruled that because the Petitioner failed to raise this cumulative error claim in state court, the claim was procedurally defaulted. *Id.*, at 472-73.

The accomplice jury instruction claim appeared in the Amended Petition as follows:

> (4) The trial court erred by failing to instruct the jury that testimony of accomplices must be corroborated by independent evidence. The erroneous jury instruction on this point was:
>
>> 'An accomplice does not become incompetent as a witness because of participation in the crime charged. On the contrary, the testimony of one who asserts by his testimony that he is an accomplice may be received in evidence and considered by the jury.' (Tr. 1717-8).

(Docket No. 42, at 39-40(¶ C4(4))). The Petitioner argues that the following claims that appeared in the Amended Petition are related and should also be reopened:

> Trial counsel failed to exercise Petitioner's fundamental rights during the course of the trial. Among other things, during the trial counsel failed to: . . . (3) object to erroneous jury instructions at both the guilt and sentencing stages which have been outlined in this Petition above; . . .
>
> * * *
>
> Petitioner's appellate counsel was ineffective in his representation of Petitioner on the direct appeal of Petitioner's conviction and death sentence to the Tennessee Supreme Court in failing to raise on appeal and/or properly brief the issues which Petitioner has been compelled to raise in this habeas proceeding. Such ineffective assistance of appellate counsel, in addition to denying Petitioner substantive rights, deprived Petitioner of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

(Docket No. 42, at 82 (¶¶ E2g, F)). In considering the Respondent's procedural defenses to these claims, the Court ruled that the Petitioner had procedurally defaulted the accomplice jury instruction claim and the ineffective assistance of appellate counsel claim, ¶ C4(4) and ¶ F. 999

F.Supp. at 1079 n. 5, 1081-83; 1080 & n. 7. The Court also ruled that the ineffective assistance of appellate counsel claim could not provide "cause" for the procedural default of the accomplice jury instruction claim because such a claim had not been presented to the state court. *Id.*, at 1084 & n. 13.

In response to Petitioner's pending motion, the Respondent argues that the Court should deny Petitioner's request to revive these claims because he has not shown the "exceptional circumstances" required for Rule 60 relief; and the *Martinez/Trevino* decisions do not apply to Tennessee criminal court proceedings.

For the reasons set forth herein, the Court concludes that Petitioner's request to reconsider his claims, under Rule 60 or otherwise, should be denied because the *Martinez/Trevino* decisions do not apply to reverse the findings of procedural default.

The *Martinez* decision centered on the procedures applied in the Arizona courts in direct appeals of criminal cases and post-conviction proceedings. The district court in *Martinez* held that the petitioner had procedurally defaulted his claim that his trial counsel was ineffective by failing to raise that claim in the Arizona state courts either on direct appeal or in post-conviction proceedings. 132 S.Ct. at 1314-15. Relying on *Coleman v. Thompson*, 501 U.S. 722, 753-54, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the district court rejected the petitioner's argument that the default should be excused because his post-conviction counsel was ineffective for failing to raise the claim, pointing out that an attorney's errors in a post-conviction proceeding do not qualify as cause for a procedural default. 132 S.Ct. at 1314-15. The Ninth Circuit affirmed the district court's decision based on *Coleman*, concluding that there is no constitutional right to effective counsel in post-conviction proceedings even where the state court, like Arizona, does

not permit ineffective assistance of trial counsel claims to be raised until the post-conviction proceeding. *Id.*, at 1315.

In reviewing the Ninth Circuit decision, the Supreme Court initially determined that it need not decide whether there is a constitutional right to effective counsel in post-conviction proceedings. The "precise question," according to the Court, "is whether ineffective assistance in an initial-review collateral proceeding on a claim of ineffective assistance at trial may provide cause for a procedural default in a federal habeas proceeding." *Id.* The Court then expressed its holding as follows: "This opinion qualifies *Coleman* by recognizing a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* The Court explained that "initial-review collateral proceedings" are "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." *Id.* In other words, where state procedure makes the post-conviction proceeding the first and only opportunity for a petitioner to raise an ineffective assistance of trial counsel claim, post-conviction counsel's failure to raise the claim provides cause for the procedural default.

In a more recent decision, the Supreme Court expanded the *Martinez* exception to cases originating in Texas, finding that even though the Texas courts do not prohibit a defendant from raising an ineffective assistance claim on direct review, the "structure and design of the Texas system in actual operation. . . make it 'virtually impossible' for an ineffective assistance claim to be presented on direct review." *Trevino v. Thaler*, 133 S. Ct. at 1915. In reaching its decision, the Court pointed out the difficulties in raising the claim in a motion for new trial because a motion for new trial must be made within 30 days of sentencing, and must be disposed of by the trial

5

court within 75 days of sentencing. 133 S.Ct. at 1918. On the other hand, the transcript of the trial and sentencing are not required to be prepared until 120 days after sentencing, and this deadline may be extended. *Id.* Thus, the opportunity to present an ineffective assistance of counsel claim in a motion for new trial is often inadequate due to the lack of an adequate record and the time constraints involved. In Trevino's case, the Court pointed out, new counsel was appointed eight days after sentencing, who then had 22 days in which to file a motion for new trial, but was unable to obtain the transcript of the proceedings until seven months after the trial. *Id.,* at 1919.

The Court also explained that the "Texas courts in effect have directed defendants to raise claims of ineffective assistance of trial counsel on collateral, rather than on direct, review." *Id.* Consequently, "Texas now can point to only a comparatively small number of cases in which a defendant has used the motion-for-a-new-trial mechanism to expand the record on appeal and then received a hearing on his ineffective-assistance-of-trial-counsel claim on direct appeal." *Id.,* at 1920. The Court concluded by holding that "where, as here, state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal, our holding in *Martinez* applies. . ." 133 S.Ct. at 1921.

The Petitioner argues that the reasoning of *Trevino* applies to the Tennessee courts because they do not provide a meaningful opportunity for a defendant to raise a claim of ineffective assistance of counsel on direct appeal. To support his argument, Petitioner cites numerous cases in which the Tennessee courts suggest that ineffective assistance of counsel claims are generally more appropriately raised in a post-conviction relief petition. *See, e.g.*, *State*

6

*v. Sluder*, 1990 WL 26552, at *7 (Tenn. Crim. App. Mar. 14, 1990).

The Respondent argues that the Tennessee system is sharply and fundamentally different from those in Arizona and Texas. While there is a 30-day deadline for an initial motion for new trial, the courts are to "liberally grant motions to amend" until the day the motion is heard. Tenn. R. Crim. P. 33(b). Defendants are permitted to present testimony in open court and/or file affidavits on the issues raised in the motion. Tenn. R. Crim. P. 33(c). Unlike Texas, there is no deadline for resolution of the new trial motion, and consequently, there is no impediment to obtaining the record of the trial and sentencing before the court is required to rule on the new trial motion.

This Court is persuaded that the Tennessee courts offer a meaningful opportunity for defendants to raise ineffective assistance claims during the direct appeal process, and therefore, the decisions in *Martinez/Trevino* do not apply to the Tennessee courts. While the more common approach is for a defendant to raise the ineffectiveness claim in post-conviction, numerous defendants have raised the claim in a motion for new trial instead. *See State v. Urbano-Uriostegui*, 2013 WL 1896931, at *15 (Tenn. Crim. App. May 6, 2013); *State v. Monroe*, 2012 WL 2367401 (Tenn. Crim. App. June 22, 2012); *State v. Smith*, 2011 WL 5517646 (Tenn. Crim. App. Nov. 14, 2011); *State v. Johnson*, 2010 WL 3565761, at *12-18 (Tenn. Crim. App. Sept. 15, 2010); *State v. Norman*, 2010 WL 3448108 (Tenn. Crim. App. Sept. 2, 2010); *State v. Beheler*, 2010 WL 271284 (Tenn. Crim. App. Jan. 25, 2010); *State v. Crosby*, 2007 WL 189384 (Tenn. Crim. App. Jan. 26, 2007); *State v. Norton*, 2005 WL 1950295 (Aug. 12, 2005); *State v. Lance*, 2003 WL 1960270 (Tenn. Crim. App. April 28, 2003); *State v. Waters*, 2003 WL 824278 (Tenn. Crim. App. Mar. 6, 2003); *State v. Brandon*, 2002 WL 31373470

(Tenn. Crim. App. Oct. 15, 2002); *State v. Anderson*, 835 S.W.2d 600, 607-08 (Tenn. Crim. App. 1992).

The Petitioner argues that Tennessee courts discourage defendants from bringing ineffectiveness claims on direct appeal, and therefore, there is no "meaningful opportunity" to raise such a claim until the post-conviction process. The Petitioner is correct that Tennessee courts have warned defendants against raising claims on direct appeal, but their concern is that the defendant may raise such a claim without developing a record to support the claim through an evidentiary hearing in the trial court:

> Initially, we note that this court has repeatedly warned appellants against presenting claims of ineffective assistance of counsel on direct appeal because (1) it may be difficult to establish ineffective assistance without an evidentiary hearing and (2) raising the issue on direct appeal bars appellant from raising the issue in a post-conviction petition. *See State v. Anderson*, 835 S.W.2d 600, 607 (Tenn.Crim.App.1992); *State v. Thomas D. Taylor*, No. E2011-00500-CCA-R3-CD, 2012 WL 6682014, at *9 (Tenn.Crim.App. Dec. 21, 2012). However, in this case, the first reason for caution has been mitigated because the trial court used the motion for new trial hearing as an evidentiary hearing for appellant's claim of ineffective assistance.

*State v. Urbano-Uriostegui*, 2013 WL 1896931, at *15 (Tenn. Crim. App. May 6, 2013). *See also State v. Smith,* 2011 WL 5517646, at *12 ("This Court has consistently 'warned defendants and their counsel of the dangers of raising the issue of ineffective assistance of trial counsel on direct appeal because of the significant amount of development and fact finding such an issue entails.'") The court went on to consider the defendant's claim by reviewing the testimony adduced at the hearing on the motion for new trial. *Id.*

Ineffectiveness claims brought in a motion for new trial are subject to the same standards as those brought in a post-conviction petition. *See*, *e.g.*, *State v. Monroe*, 2012 WL 2367401, *4 (Tenn. Crim. App. June 22, 2012). Indeed, the defendants in *State v. Honeycutt*, 54 S.W.3d 762

(Tenn. 2001) and *State v. Burns*, 6 S.W.3d 453 (Tenn. 1999) were successful in overturning their convictions on direct appeal by raising ineffective assistance of counsel claims in a motion for new trial and developing proof at evidentiary hearings held on the motions.

The Petitioner cites numerous Tennessee cases where the courts have "routinely refused to consider ineffectiveness claims raised on direct appeal." (Docket No. 353, at 2, n. 1). In those cases, however, the defendants have failed to develop the record at a hearing in the trial court (or failed to file the record on appeal), and the appeals court has refused to consider the claim in order to preserve it for post-conviction. *State v. Allen*, 2011 Tenn. Crim. App. Lexis 260, *23 (Tenn. Crim. App. Apr. 5, 2011)(defendant concedes claim should not be addressed on appeal because not addressed by trial court); *State v. Roberts*, 2011 Tenn. Crim. App. Lexis 240, *11-12 (Tenn. Crim. App. Mar. 30, 2011)(transcript of motion for new trial hearing not included in record); *State v. Johnson*, 2010 Tenn. Crim. App. Lexis 143, *22-23 (Tenn. Crim. App. Feb. 18, 2010)(claim not raised in trial court); *State v. Gerhardt*, 2009 Tenn. Crim. App. Lexis 523, *54-58 (Tenn. Crim. App. Jan. 23, 2009)(claim not raised in trial court); *State v. Lones*, 2007 Tenn. Crim. App. Lexis 206, *14-15 (Tenn. Crim. App. Mar. 6, 2007)(defendant concedes claim is not ripe for review as no evidence presented in trial court); *State v. Haynes*, 2006 Tenn. Crim. App. Lexis 275, *4-8 (Tenn. Crim. App. Apr. 3, 2006)(claim not raised in trial court); *State v. Holloway*, 2003 Tenn. Crim. App. Lexis 797, *23-24 (Tenn. Crim. App. Sept. 17, 2003)(no evidence presented at hearing on motion for new trial as defendant raised claims *pro se* and counsel requested that the court not rule on the merits); *State v. McCann,* 2001 Tenn. Crim. App. Lexis 840, *41-42 (Tenn. Crim. App. Oct. 17, 2001)(claim not raised in trial court); *State v. Belcher*, 1997 Tenn. Crim. App. Lexis 1185, **15-16 (Tenn. Crim. App. Nov. 26, 1997)(claim

9

not raised in trial court); *State v. Madkins*, 1997 Tenn. Crim. App. Lexis 808, *12-13 (Tenn. Crim. App. Aug. 22, 1997)(claim not raised in trial court); *State v. Sepulveda*, 1997 Tenn. Crim. App. Lexis 598, *16-20 (Tenn. Crim. App. Jun. 26, 1997)(no evidence presented to support claim in trial court); *State v. Turner*, 1997 Tenn. Crim. App. Lexis 552, *26-29 (Tenn. Crim. App. Jun. 11, 1997)(claim not raised in trial court); *State v. Blye*, 1990 Tenn. Crim. App. Lexis 846, *4-6 (Tenn. Crim. App. Dec. 17, 1990)(no proof presented in trial court on *pro se* ineffectiveness claims, but appeals court preserves issue for post-conviction); *State v. Tilley*, 1990 Tenn. Crim. App. Lexis 845, *4-5 (Tenn. Crim. App. Dec. 14, 1990)(claim not raised in trial court); *State v. Fletcher,* 1990 Tenn. Crim. App. Lexis 830 (Tenn. Crim. App. Dec. 13, 1990)(claim not raised in trial court); *State v. Sluder*, 1990 Tenn. Crim. App. Lexis 222, *22-24 (Tenn. Crim. App. Mar. 14, 1990)(claim not raised in trial court).

Unlike defendants in Texas, defendants in Tennessee are not faced with a system in which it is "highly unlikely" they will have "a meaningful opportunity" to raise a claim of ineffective assistance of trial counsel during the direct appeal process. As the cases cited above indicate, procedural rules allow Tennessee defendants such a meaningful opportunity through the motion for new trial and evidentiary hearing mechanism. That most defendants choose to defer raising such a claim until the post-conviction process does not mean that raising the claim on direct appeal is "virtually impossible" as was the case in *Trevino*.

Petitioner also argues that the *Martinez/Trevino* decisions apply in this case because he had no "meaningful opportunity" to raise a claim of ineffective assistance of counsel due to the nature of his representation. Petitioner argues that trial counsel represented him at the motion for new trial, and therefore, a conflict of interest prevented him from raising claims of his own

ineffectiveness as part of that proceeding; and direct appeal counsel also represented him in post-conviction proceedings, and therefore, a conflict of interest prevented him from raising claims of his own ineffectiveness in the post-conviction proceedings.

The lack of a "meaningful opportunity" the Court referred to in *Martinez/Trevino*, however, was caused by the procedural rules imposed by the state courts in Arizona and Texas. Neither case considered the "conflict of interest" argument made by the Petitioner here, and Petitioner has not cited any authority in which the Supreme Court or the Sixth Circuit has expanded the *Martinez/Trevino* decisions as suggested by the Petitioner. Indeed, in *Hodges v. Colson*, 711 F.3d 589, 603 (6th Cir. 2013), the Sixth Circuit refused to expand the *Martinez* decision to ineffective assistance of *appellate* counsel claims:

> The Court in *Martinez* purported to craft a narrow exception to *Coleman*. We will assume the Supreme Court meant exactly what it wrote: '*Coleman* held that an attorney's negligence in a postconviction proceeding does not establish cause and this remains true *except* as to initial-review collateral proceedings for claims of ineffective assistance of counsel *at trial.*'
>
> * * *
>
> . . . [H]ere [Hodges] claims ineffective assistance of post-conviction counsel as cause to excuse default of his claim of ineffective assistance of *appellate* counsel for failure to raise the juror misconduct issue on direct appeal. Under *Martinez* 's unambiguous holding our previous understanding of *Coleman* in this regard is still the law – ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel.

711 F.3d 589, 602-03 (footnote omitted).

Finally, the Court notes that none of the cases cited by the Petitioner in his Second and Third Supplemental filings analyze and apply *Martinez* and *Trevino* to the Tennessee state courts. *Balentine v. Thaler*, 133 S.Ct. 2763 (June 3, 2013); *Haynes v. Thaler*, 133 S.Ct. 2764

11

(June 3, 2013); *Mitchell v. Fortner*, Case No. 1:93-0073 (M.D. Tenn. June 13, 2013).[2] The Court is not persuaded that these cases dictate a different result.

It is so ORDERED.

                                                  TODD J. CAMPBELL
                                                  UNITED STATES DISTRICT JUDGE

---

[2] Two of those decisions were simply orders by the Supreme Court remanding cases, which involved the same Texas court system that was at issue in *Trevino,* to the Fifth Circuit for further consideration in light of *Trevino*. *See*, *e.g.*, *In re: Whirlpool Corporation Front-Loading Washer Products Liability Litigation*, _ F.3d _, 2013 WL 3746205, at *1 (6th Cir. July 18, 2013)("[A] GVR order does not necessarily imply that the Supreme Court has in mind a different result in the case, nor does it suggest that our prior decision was erroneous.") The third decision is an order with no analysis of the legal issues.